Good morning, Your Honours. May I please the Court? My name is Melanie Yang. I will be representing the petitioner today. My argument will be the immigration judge yield in rule that the persecution the petitioner suffered was not on account of political opinion or imputed political opinion. Her husband was an important member of the National Democratic Union and the petitioner testified both on direct examination and cross-examination that her husband participated in the political activities and also the people broke into her house, beat her husband and the petitioner said you have to get out of NDU otherwise we will destroy your family. As I understand the issues, that's one of the principal issues, is that the immigration judge found that the husband had been murdered but found that the statement was not credible to the extent that she stated, that made the statement you just repeated, that at the time of the murder they said you have to get out of the political party. He said that that was not a credible statement because she did not put that statement into her application or she did not in her application claim that the murder was political. What is your response to that? My response is the application was prepared by a non-professional immigration consultant and the petitioner spoke the story in Armenian language then the people fill up the application and also because usually those immigration consultants, you know, is not very responsible and the petitioner does not have, just came to the United States, does not have a lot of money to hire high quality lawyers and as a matter of fact I think Ninth Circuit Court had several of these kind of cases. In one of the cases, Agourian Coda v. Inez, Ninth Circuit 1990 case, held that failing to find an application form that was as complete as might be desired cannot without more probably serve as the basis for a finding of lack of credibility. The other issue that as far as I can tell from the record that the government is relying on is that there is no fear of returning because your client went back to the country. I think it was shortly before filing her asylum application she went back to the country and therefore they say she didn't have any fear. Okay. Actually the experience she had after she returned to Armenia briefly proved that she had a fear, she should have fear about returning to Armenia because during that period the petitioner thought the government has changed. The new president, Mr. Kokaryan, was president at that time around 1997. So she went back to district attorney's office again, tried to reopen her husband's case to find who's the killer for that case. And as a matter of fact, as the judge wrote in his decision, she found out the government is as corrupt as it has been before. And the district attorney's office told her the same story. You have to shut up, forget about your husband's case. And also they demanded the money from her. And also I want to say about the money thing. On the cross-examination, the district counsel tried to pin down that the district office asked for money is just extortion. And the petitioner repeated several times saying no, and I want to explain. At the very end she explained that this is a government robbery, was supported by government. And I will characterize that as she means there's political motivations behind the extortion of the money. And also the district attorney's office detained her, I believe, for a night. And that is illegal imprisonment, and after she got out of that, she realized she's not safe in that country, so she came back to the United States. All right, thank you. Is there anything else in particular that you think we need to know that's not covered in the briefs? Yes. After reading the government's brief, I want to point out on the record the petitioner's witness, the judge held that she was credible, mentioned she met the petitioner and her husband twice in 1992-1993, and once she saw the petitioner's husband was speaking at a rally. And also she testified that there was a pattern of persecution against the government dissidents. That is at administrative record somewhere around 128, 129. This evidence also supports the motive for the beating was critical. All right, thank you. Do you want to save the rest of your time for rebuttal? Yes, I want to reserve time for the rebuttal. Thank you. Thank you, Your Honor. May it please the Court. William Minnick, representing the respondent. Substantial evidence supports the immigration judge's denial of asylum because the record does not demonstrate persecution on account of a political opinion. Petitioner's asylum claim is essentially based on- Well, it would if you believed her testimony that before they killed her husband, they said you have to get out of the political party. That would do it, wouldn't it? No, Your Honor. That wouldn't do it. And I don't think that the immigr- I think the immigration judge found her credible and gave her the benefit of the doubt that the individuals did say that. Oh, you did? Oh, all right. That's the way I took the immigration judge's decision. Do you think if they came in and said that the reason all this is happening is because you won't get out of a political party and they killed her husband, that wouldn't be enough? That's not enough, Your Honor. And the immigration judge did find that. They said you need to get out of the NDU, although it's unclear from the record whether they actually said that. The immigration judge did find it. But even then, that's not enough for asylum because it's a single, one single stray reference during what was a robbery. And after that, no one ever said anything to her about the NDU ever again. She was in Armenia in 1994. Wasn't there just one item taken, just the one gold brooch was taken after the beating? She testified that it took a golden ring, a watch, and a bracelet, record at 2-11. And these are robbers who just, in the course of a robbery, incidentally say, by the way, you know, while we're killing you, you know, we wish you'd gotten out of that political party. It was just they just had a strong feeling about politics, those robbers. It's unclear from the record, Your Honor. The record's not just the record's not that developed. The only thing that is clear from the record is that, well, the only thing the record suggests is that they made this one stray reference. I don't know why you keep saying stray. I mean, robbers, it was sort of a casual thing because, you know, what they cared about was a robbery, but they just thought they might as well make a political comment while they were about it because they were so dedicated to politics. It's not clear from the record why they made the comment, Your Honor. And the reason I characterize it as a stray reference is because they, it's, there's no testimony regarding the duration of the incident, how long the two men were in the apartment or house. But apparently they were, they were long enough to severely beat her husband, to look for hidden jewelry. So it lasted at least a little bit. And the reason I characterize it as a stray reference is because the, the only indication from the record is that they, they mentioned it once during the robbery. And then she never heard anything about the NDU again. She was there in 94, 95, 96. No one ever came back. No one ever said anything to her about the NDU. She voluntarily returned in 1998 and she was there for a year. She was back there for a year. Again, she never claimed anyone ever said anything to her about the NDU, which indicates that the 93 incident really was just a robbery. Well, her husband was gotten out of the NDU. There's no doubt about that. He was no longer active in the NDU. Well, what do you make of all the evidence? And you're right. IJ didn't find her lacking credibility at all. And she testified and she had a witness corroborating that she and her husband were both extremely active in the NDU. There's no doubt about that. They were extremely active. Then he gets beaten up to the point of death. And they talk about getting him out of the NDU. I don't understand why this is being characterized just as a robbery. It's as though the IJ and the government are just taking this thing in isolation, the fact that the watch and ring were taken, and calling that a robbery and ignoring everything else that circumscribes the events. What makes it look like a robbery is the fact that she was an active participant even after the event. She testified in the record that 94, 95, 96, she was still very active in the NDU, and nothing ever happened to her. So they didn't stop her, but they stopped her husband. Well, they didn't come there to murder him that night. How do you know? Well, the testimony was that the two men were armed. If they wanted the husband dead, they could have shot him then and there. Maybe they prefer to use their arms. Pardon me? Maybe they prefer to use their hands and beat someone. He was alive when they left, Your Honor. How do we know whether they came to murder him? We don't know what they intended when they got there. You're right, Your Honor. Let's not speculate. We have enough of that in these decisions. Yes, Your Honor. Okay. The Petitioner also stated in her asylum application that her husband was killed by criminals. Well, she also said it was for political motives in her asylum application. She did, Your Honor. But the only evidence of any – the only possible suggestion of any evidence of a political motive is the one single statement, get out of the NDU. Okay. But you were saying she didn't state it, that she said in her asylum application that he was killed by criminals. But she also says that my life was severely threatened first because of my husband's political views and because I'm not a full-blooded Armenian. That's correct, Your Honor. You're right. It does say that. And, again, the only reason that she's speculating that that's the case is the one statement that they made during the robbery. Well, she also says in the application he was told that if he would cooperate with the ANN, they would allow us to live and work in Armenia. If not, they would kill him, me, and our daughter. So there's plenty in the application that suggests that he was killed for political reasons and he had been warned he would be killed. And she also says, as we've heard in the last case, that the government people not only are sometimes, or the other people, whether they're ins or the outs, that in some of these cases they're not only thugs, but they're corrupt,  so it's not surprising that there might be a mixed motive of politics and money. But I don't quite understand. I mean, I'm happy to have your view that the IJ did not question her credibility because I read this somewhat differently when he said there was a huge credibility problem and then said that the, you know, that she hadn't mentioned this, their statements in her application, but that made him very dubious about it and then ended up finding there was no political motive. He did say that there was a huge credibility problem. He even detailed some of his concerns, but he did not make an explicit adverse credibility finding. And I'm looking at item 5, the court. I think that's probably correct. There's no explicit finding, but he based his decision, nevertheless, that there was no political. And that may be one of the problems, that although he didn't find her incredible, he, when he based his decision on the fact that this was just a simple robbery and, in effect, discounted the testimony. Your Honor, if I may, I'm not sure I agree with that characterization. I think the immigration judge specifically considered the fact that the men said you need to get out of the NDU on page 40, administrative record page 49. The immigration judge, in his factual findings, writes, she testified that they said you have to get out of the NDU or we will destroy her family. And then the immigration judge says, no, no, that's not factual finding. That's just a list, a statement of what the testimony is. And then on page 59, Your Honor, the immigration judge says, after talking about the credibility problems, I'm willing to give her the benefit of the doubt. So the immigration judge took her testimony as true, and even giving her the benefit of the doubt and ignoring his, what he felt were adverse credibility concerns, he gave her the benefit of the doubt, credited her testimony and found that even then, even that statement didn't demonstrate, she didn't meet her burden of proof of showing it was on account of a political opinion, that they get out of the NDU. Can you say page 59, there's a statement about this case? Page 59, about halfway down, he says, I'm willing to give her the benefit of the doubt. I'm willing to give her the benefit of the doubt. And believe that, in fact, that document may have been modified to protect the well-politically connected miscreants. You're right, Your Honor, I agree. He is talking about the document at the top of the page. He says, I don't think she's lying. I mean, he clearly did not make an adverse credibility finding. Well, again, he's talking about the biggest credibility finding, which is the death certificate. Then he finally kindly decides that her husband really did die, although he's upset that she didn't make a sufficient effort to get documentation. But what's the basis, then, for the finding that political opinion has nothing to do with past persecution? I'm out of time, Your Honor, if I may answer. Certainly. I guess we're presuming for this exercise that, one, they were warned that her husband would be killed if he didn't abandon his political activities.  And in the course of the killing, talked about his political opinions and said he should have gotten out of the political party. On the basis of that, he found that he was not political opinion played no part in his death? I don't think he explicitly found that it played no part, but the one statement isn't enough for her to meet her burden of proof of demonstrating that it was on account of a political opinion. It was one comment. Could there have been multiple motives? I'm reading the State Department report on Armenia. This is the 1997 report. And it says that political affiliations, business and professional activities, and criminal enterprises are often closely intertwined. And individual acts of intimidation may be motivated by a mixture of these factors, with the mix varying from case to case. So why isn't this a case where, you know, they had both the political intimidation motive and some kind of criminal element? Simply because that it was the alien's burden of proof to demonstrate that it was a mixed motive, to demonstrate that they were there to rob her husband and to get him out of the NDU. Okay. Well, she testified to that, and she was not found not to be credible. So taking her testimony as true, doesn't that supply her burden of proof? Your Honor, no. The immigration judge decided that the one statement, get out of the NDU, was not enough in the totality of the circumstances. I would ask the Court to remember that she stayed in Armenia for three years, 94, 95, 96. If they really threatened to kill her and her daughter. But he was out of the NDU. After the death or before the death are you talking about? I'm talking about after the death. After the death. Well, he was out of the NDU by then. I can't argue with that, Your Honor. Okay. And, again, I know I'm way over time, but I think what I invite the Court to consider is that she actively participated. She was specific about that for three years after that. Her son still lives in Armenia. He's not been harmed. She was there. That goes to well-timed and fear. We're talking about two separate things. One is whether there was persecution. And the things that you talk about about what happened afterwards doesn't affect the finding that she was the subject of persecution. That moves on to the next issue. Has she established a well-timed fear? And there we also have another issue, which we don't have time to talk about, is whether that requires a ventura remand or not. Do you have a position on that? On whether if the Court determines? Let's assume we find there's past persecution. Are we free then to move on and determine whether there's a well-founded fear or are we required to remand to the Board for that? We'll have to go back, Your Honor. Okay. Thank you. Thank you, Your Honor. We ask the Court to deny the petition for review. Thank you. Okay. Your Honor, I just want to say on Administrative Record 112, one of my client's clear answer is jury no. At first they were saying you have to leave the membership of MDU. That is on direct examination at page 112. I will argue this is a mixed motive case. And the Ninth Circuit Court held in several cases a persecutor may have multiple motives for inflicting harm on applicants. Like one of the cases, BORG-AVI, Ninth Circuit 1999 case, says extortion plus other political motives, the judge granted the Ninth Circuit granted the petition for review. This is similar to our case. And I also want to argue if the judge held both the petitioner and her witness credible, then the evidence on the record does not support his conclusion. My client is not eligible for political asylum because she has already proved she suffered past persecution because killing of somebody's husband is a very serious persecution. And I ask the Ninth Circuit Court to remand this case to BIA for further proceeding on the political asylum application and also considering the withholding of removal. Thank you. That's my argument. Thank you, Your Honors. The case just argued will be submitted. The Court will stand in order.
judges: Reinhardt, Wardlaw, Paez